# EXHIBIT 3

Docket No.: 2667-001-02

PTO/SB/16 (10-07)
Approved for use through 06/30/2010. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## PROVISIONAL APPLICATION FOR PATENT COVER SHEET – Page 1 of 2

This is a request for filing a PROVISIONAL APPLICATION FOR PATENT under 37 CFR 1.53(c).

**Express Mail Label No.** EV 835469754 US

**INVENTOR(S)**

| Given Name (first and middle [if any]) | Family Name or Surname | Residence (City and either State or Foreign Country) |
|---|---|---|
| Timothy P. | Heikell | Seattle, WA |
| | | |
| | | |
| | | |
| | | |

*Additional inventors are being named on the* __________ *separately numbered sheets attached hereto*

**TITLE OF THE INVENTION (500 characters max):**

Methods, Apparatus and Systems for Verifying Human User Presence in a Networked Environment

*Direct all correspondence to:* **CORRESPONDENCE ADDRESS**

☑ The address corresponding to Customer Number: 000996

***OR***

☐ Firm or Individual Name

Address

| City | State | Zip |
|---|---|---|
| Country | Telephone | Email |

**ENCLOSED APPLICATION PARTS *(check all that apply)***

☑ Application Data Sheet. See 37 CFR 1.76

☐ CD(s), Number of CDs ________

☐ Drawing(s) *Number of Sheets* ________

☐ Other (specify) ________

☑ Specification (e.g. description of the invention) *Number of Pages* 4

**Fees Due:** Filing Fee of $210 ($105 for small entity). If the specification and drawings exceed 100 sheets of paper, an application size fee is also due, which is $260 ($130 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s).

**METHOD OF PAYMENT OF THE FILING FEE AND APPLICATION SIZE FEE FOR THIS PROVISIONAL APPLICATION FOR PATENT**

☑ Applicant claims small entity status. See 37 CFR 1.27.

☑ A check or money order is enclosed to cover the filing fee and application size fee (if applicable).

☐ Payment by credit card. Form PTO-2038 is attached

**TOTAL FEE AMOUNT ($)** 105.00

☑ The Director is hereby authorized to charge the filing fee and application size fee (if applicable) or credit any overpayment to Deposit Account Number: 07-1897. A duplicative copy of this form is enclosed for fee processing.

***USE ONLY FOR FILING A PROVISIONAL APPLICATION FOR PATENT***

This collection of information is required by 37 CFR 1.51. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 8 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

***PROVISIONAL APPLICATION COVER SHEET***
***Page 2 of 2***

PTO/SB/16 (10-07)
Approved for use through 06/30/2010. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

The invention was made by an agency of the United States Government or under a contract with an agency of the United States Government.

☑ No.
☐ Yes, the name of the U.S. Government agency and the Government contract number are: ______________________

## WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

SIGNATURE [signature] Date 19 November 2007

TYPED or PRINTED NAME Stephen M. Evans REGISTRATION NO. 37,128
*(if appropriate)*

TELEPHONE 425-455-5575 Docket Number: 2667-001-02

PTO/SB/14 (07-07)
Approved for use through 06/30/2010. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| | | |
|---|---|---|
| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 2667-001-02 |
| | Application Number | |
| Title of Invention | Methods, Apparatus and Systems for Verifying Human User Presence in a Networked Environment | |

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2 (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Applicant Information:

**Applicant 1**

**Applicant Authority** ◉ Inventor ◯ Legal Representative under 35 U.S.C. 117 ◯ Party of Interest under 35 U.S.C. 118

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Timothy P. | P. | Heikell | |

**Residence Information (Select One)** ◉ US Residency ◯ Non US Residency ◯ Active US Military Service

| | | | | | |
|---|---|---|---|---|---|
| **City** | Seattle | **State/Province** | WA | **Country of Residence** i | US |
| **Citizenship under 37 CFR 1.41(b)** i | | | | | |

**Mailing Address of Applicant:**

| | | | |
|---|---|---|---|
| **Address 1** | 3611 Hanford Street | | |
| **Address 2** | | | |
| **City** | Seattle | **State/Province** | WA |
| **Postal Code** | 98126 | **Country**i | US |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button. [Add]

## Correspondence Information:

**Enter either Customer Number or complete the Correspondence Information section below.**
**For further information see 37 CFR 1.33(a).**

☐ **An Address is being provided for the correspondence Information of this application.**

| | | |
|---|---|---|
| **Customer Number** | 00996 | |
| **Email Address** | sevans@graybeal.com | [Add Email] [Remove Email] |

## Application Information:

| | | | |
|---|---|---|---|
| **Title of the Invention** | Methods, Apparatus and Systems for Verifying Human User Presence in a Networked Environment | | |
| **Attorney Docket Number** | 2667-001-02 | **Small Entity Status Claimed** | ☒ |
| **Application Type** | Provisional | | |
| **Subject Matter** | Utility | | |
| **Suggested Class (if any)** | | **Sub Class (if any)** | |
| **Suggested Technology Center (if any)** | | | |
| **Total Number of Drawing Sheets (if any)** | | **Suggested Figure for Publication (if any)** | |

PTO/SB/14 (07-07)
Approved for use through 06/30/2010. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 2667-001-02 |
|---|---|---|
| | Application Number | |
| Title of Invention | Methods, Apparatus and Systems for Verifying Human User Presence in a Networked Environment | |

## Publication Information:

☐ Request Early Publication (Fee required at time of Request 37 CFR 1.219)

☐ **Request Not to Publish.** I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication at eighteen months after filing.

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32).
Enter either Customer Number or complete the Representative Name section below. If both sections are completed the Customer Number will be used for the Representative Information during processing.

| Please Select One: | ⦿ Customer Number | ◯ US Patent Practitioner | ◯ Limited Recognition (37 CFR 11.9) |
|---|---|---|---|
| Customer Number | 000996 | | |

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, or 365(c) or indicate National Stage entry from a PCT application. Providing this information in the application data sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78(a)(2) or CFR 1.78(a)(4), and need not otherwise be made part of the specification.

| Prior Application Status | | Remove | |
|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) |
| | | | |

Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button.

## Foreign Priority Information:

This section allows for the applicant to claim benefit of foreign priority and to identify any prior foreign application for which priority is not claimed. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55(a).

Remove

| Application Number | Country i | Parent Filing Date (YYYY-MM-DD) | Priority Claimed |
|---|---|---|---|
| | | | ⦿ Yes ◯ No |

Additional Foreign Priority Data may be generated within this form by selecting the **Add** button.

## Assignee Information:

Providing this information in the application data sheet does not substitute for compliance with any requirement of part 3 of Title 37 of the CFR to have an assignment recorded in the Office.

**Assignee 1**

PTO/SB/14 (07-07)
Approved for use through 06/30/2010. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 2667-001-02 |
|---|---|---|
| | Application Number | |
| Title of Invention | Methods, Apparatus and Systems for Verifying Human User Presence in a Networked Environment | |

| If the Assignee is an Organization check here. ☐ | | | | |
|---|---|---|---|---|
| Prefix | **Given Name** | Middle Name | **Family Name** | Suffix |
| | | | | |
| **Mailing Address Information:** | | | | |
| **Address 1** | | | | |
| Address 2 | | | | |
| **City** | | **State/Province** | | |
| **Country** | | Postal Code | | |
| Phone Number | | Fax Number | | |
| Email Address | | | | |
| Additional Assignee Data may be generated within this form by selecting the **Add** button. | | | | |

## Signature:

| A signature of the applicant or representative is required in accordance with 37 CFR 1.33 and 10.18. Please see 37 CFR 1.4(d) for the form of the signature. | | | | | |
|---|---|---|---|---|---|
| **Signature** | /Stephen Evans/ | | | Date (YYYY-MM-DD) | 2007-11-19 |
| First Name | Stephen | Last Name | Evans | Registration Number | 37128 |

This collection of information is required by 37 CFR 1.76. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

## BACKGROUND

The Internet is a fantastic tool for constructive web sites to gather users for a common purpose; however, the Internet is also a fantastic tool for abuse of these same web sites. People who want to take advantage of websites do so by creating automated programs employing various algorithms and routines (hereinafter "bots") that create fictitious accounts or access content for a multitude of reasons.

In an effort to block these bots, builders of web sites have created a variety of tests to determine if the user is a bot or if the user is a human. Initial efforts required a user to simply enter an alphanumeric string into an input field. However, as character recognition engines became more available, such "tests" became easily defeated. What was needed was a more robust form of test – one that couldn't be easily defeated.

Carnegie Mellon University coined the term "CAPTCHA" (Completely Automated Public Turing test to tell Computers and Humans Apart) for these types of tests. A common type of CAPTCHA requires that the user type the letters, digits or characters of a distorted image appearing on the screen. The objective is to create an image that a bot cannot easily parse but that is discernable by a human. Such efforts have been successful in preventing non-adaptive software from recognizing the imaged characters, but people intent on abusing these sites have designed ways to circumvent the CAPTCHA, such as through specially tuned character recognition programs. A brief survey of the Internet will reveal many resources that describe how to tune and/or use character regcognition to decipher CAPTCHA including aiCaptcha, Simon Fraser University and PWNtcha.

The result of the foregoing is that while CAPTCHAs are becoming increasingly more difficult for bots, they are also becoming more difficult and/or burdensome for human users. In certain instances, the desire to defeat the bots has resulted in images that are so distorted that some human users cannot decipher the images. This is particularly true with users having a visual deficiency or imparity. As a partial solution to this escalation of perception difficulty, some web sites have begun adding a link to a sound file that will speak the characters, but these sound files are also being drastically distorted to protect against being discerned by bots through speech pattern matching algorithms. Other web sites like Facebook.com, have gone so far as to adopt a practice requiring deciphering two distorted word images to increase the complexity for bots. While perhaps achieving the stated objective, the collateral effect is to exacerbate the existing burden to human users.

Current CAPTCHA technology is visual or auditory in nature, requiring the human user to answer a test that should be simple to most humans but difficult for non-humans, e.g.,



EV835469754US

bots. Visual CAPTCHA using distorted images is widely used as the primary test by nearly every top Internet site including Yahoo, Google, You Tube, Microsoft's Live ID, MySpace, Facebook, Wikipedia, Craigs List. By using solely visual testing criteria, nearly all users will be able to invoke the requested action; not all users have functioning audio equipment or environments such as libraries may not permit such use.

A positive user experience is critical to the success and increased popularity of a given website. Designers of web sites go to great lengths to ensure their website is as user friendly as possible. Carnegie Mellon University estimates that 60 million CAPTCHA tests are deciphered every day and with an average time spent of 10 seconds, requiring a total of 150,000 hours of work spent every day trying to protect web sites from bots. Reducing or eliminating the requirement of a user having to decipher CAPTCHA is one more way websites can create a more positive user experience for their visitors and minimize opportunity costs.

The reader is directed to a very good analysis of the needs and issues related to CAPTCHA at w3.org.

## Summary of the Invention

It is recognized that as no lock is pick-proof, no CAPTCHA test will be completely invulnerable to a bot. However, the invention is intended to significantly increase a web site's resistance to bot deciphering while minimizing the collateral overhead to the human user of the same web site. Broadly stated, the invention is directed to methods, apparatus and systems for mitigating the effectiveness of a bot when attempting to invoke a function/access data on a server computer by exploiting user biometrics.

While current CAPTCHA tests are based on discerning visual and/or auditory cues, embodiments of the invention are based on biometric analysis of a user's actions. This avoids the "there is only one right answer" phenomena inherent in prior art CAPTCHA tests, yet exploits pre-existing user input to assess uniqueness. In other words, rather than placing the burden of proof for functionality/access on the user, the burden is on the server side of the equation using already acquired biometric information.

Inherent in such methods, apparatus and systems is a biometric logging function ("BLF"). The BLF records user derived input data comprising one or more of the following non-exclusive list, alone or in combination: Keystroke cadence, pointing device movement and/or cadence, cookie data, data regarding display duration at preceding web pages (and/or any of the foregoing metrics), etc. The BLF data can then be compared to a database of biometric parameters likely associated with human action, where after the user request is either permitted or denied. The comparison can take place locally, or remotely on the originating server or a dedicated server (the latter architecture being part of business methods associated with the invention).

A primary objective of bot creation is to autonomously access data and/or functionality of the server as quickly as possible. By assessing user biometrics having a time domain, the time variable becomes a necessary component to accessing the data and/or functionality of the server. Because such assessment has heretofore been absent as a valid CAPTCHA marker of a human user, and more importantly because proper data input would necessarily slow the process, the likelihood of bot penetration has been significantly reduced.

In view of the foregoing, an embodiment of the invention employs a first layer of testing that simply checks if there were valid mouse movements and/or key strokes inputted by the user. This basic "if-then" check is essentially without overhead since there are no computations being carried out. Checking for the existence of the target activity therefore represents a first pass evaluation; if the bot is not programmed to include pseudo biometric data, further access is denied. In other words, if no activity is recorded there is a very high probability that the user is actually a bot.

A fundamental premise of robust biometrics is that a given dataset is unique. Therefore, if the dataset is sufficiently robust, it is impossible to have duplicative input data unless the input data was derived from a machine. Exploiting this premise allows a second level knockout assessment of invention embodiments to deny user access if the input data exactly (or statistically sufficiently) matches previously recorded data. Of course, the skilled practitioner employing this method can select (either explicitly or via programming) sample points of a dataset for comparison as opposed to all data, thereby reducing computational overhead and storage issues. Alternatively, if samples are used, an exact match could then invoke a more intensive comparison with the same stored datasets, where again access can be denied when an exact or statistically sufficient match is found.

In the foregoing two assessments, an object has been to ferret out bots in an efficient and low overhead manner by exploiting intrinsic design limitations. However, it is possible that a bot designer could spoof these assessment means by, for example, running many bots in parallel wherein intrinsic delays in CPU processing and bandwidth would introduce inherent time delays associated with the very inputs being assessed. Therefore, more robust assessment means may be employed to ascertain the presence of a bot.

In robust embodiments of the invention, a third layer of testing may be employed that compares recorded pointer movements and key strokes to previously recorded activity for a given input page that was knowingly created by humans. Thus, as input data is collected for a given page, patterns will emerge that are unique to human activity. Subsequently recorded activity that is inconsistent with these patterns would indicate the potential that the user is a bot. Access could then be denied, or further CAPTCHA

tests presented. Alternatively, access could be granted since no lock is pick proof and an object of the invention embodiments is to minimize user exposure to CAPTCHA tests.

Because user input data is rarely streamed, the BLF preferably resides on the client computer during a browsing session. The BLF can be installed as an existing program, a covert program (many malware applications log keystrokes and periodically pass them to remote servers for malicious purposes; similar technology can be used to exploit necessary aspects of the invention embodiments), or a servlet/Java applet. To ensure user privacy, the BLF can remain dormant until activated by a viewed web site.

As noted earlier, not only keystrokes and/or pointer movements can be recorded and assessed for biometric data. In addition to, or in lieu of, additional harvestable data can be exploited such as browsing habits, cookie data and the like. Purely server side functions are used in certain embodiments of the invention, and include, but are not limited to, time logs for new page requests, link activations, site visits, browsing habits (browsing histories available from cookies), and similar data. Thus, valid biometric data can be obtained without engaging in activity that might be objectionable to some users. In addition, features of the invention can also be used with conventional visual CAPTCHA tests. For example, a machine's ability to parse and identify an alphanumeric string, as well as send the string to the originating server is nearly always faster than a human's ability. By employing a biometric analysis of the time between page display incorporating a visual CAPTCHA test and receipt of the user's input, a valid assessment can be made of the user's status.

From the foregoing, it can be seen that implementation of the invention embodiments can be accomplished exclusively from the server side; it is not necessary to distribute or install in the conventional sense client side software. Existing available browsers and operating systems provide the means necessary to temporarily install logging code, if such is elected. Moreover, the methods employed herein are highly transparent to the user, thereby achieving an objective of enhancing the user's experience of a web site employing bot assessment protocols.