# EXHIBIT 4

8178164

# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

*November 09, 2021*

**THIS IS TO CERTIFY THAT ANNEXED IS A TRUE COPY FROM THE RECORDS OF THIS OFFICE OF THE FILE WRAPPER AND CONTENTS OF:**

**APPLICATION NUMBER:** *12/313,502*
**FILING DATE:** *November 19, 2008*
**PATENT NUMBER:** *9595008*
**ISSUE DATE:** *March 14, 2017*

UNITED STATES PATENT AND TRADEMARK OFFICE
DEPARTMENT OF COMMERCE

Certified by

Performing the Functions and Duties of the
Under Secretary of Commerce
for Intellectual Property
and Director of the United States
Patent and Trademark Office

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Applicant: | Timothy P. Heikell |
| Title: | **SYSTEMS, METHODS AND APPARATUS FOR EVALUATING STATUS OF COMPUTING DEVICE USER** |
| Serial No.: | 12/313,502 |
| Filing Date: | 19 November 2008 |
| Confirmation No.: | 7132 |
| Examiner/Art Unit No.: | TBD / 2129 |
| Attorney Docket No.: | 2667-001-03 |

**37 CFR §1.8**
**CERTIFICATE OF TRANSMISSION**

I hereby certify that this correspondence is being transmitted via the Office electronic filing system, EFS-Web, addressed to the Commissioner for Patents, PO Box 1450, Alexandria, Virginia 22313-1450 on the date indicated below.

| | |
|---|---|
| /Lisa S. Susser/ | 17 February 2009 |
| Lisa S. Susser | Date |

## RESPONSE AND PRELIMINARY AMENDMENT

TO THE COMMISSIONER FOR PATENTS:

The Applicant requests preliminary amendment of the above referenced patent application as follows:

**Amendments to the Claims** is reflected in the listing of claims, which begins on page 2 of this paper;

**Amendment to the Abstract** begins on page 5 of this paper; and

**Remarks/Arguments** begin on page 6 of this paper.

**Amendments to the Claims:**

The following listing of claims replaces all prior listings of claims in the application:

**What is Claimed:**

1. (Canceled)

2. (New) A method for assessing the likely user status of a client computing device interacting with a server wherein the computing device is in bi-directional operative communication with the server, the method comprising:

a) presenting issued data to the client computing device;

b) monitoring at least some data generated at the client computing device in response to the issued data;

c) comparing the monitored data to model data relating to human interaction with or in response to the issued data; and

d) generating a value that represents a likelihood that the monitored data results from human interaction with or in response to the issued data.

3. (New) The method of claim 2 wherein the model data comprises active model data.

4. (New) The method of claim 3 wherein the active model data comprises pointing device vector movements and/or cadence; key stroke combinations and/or cadence; and/or time differentials between a display element and a response.

5. (New) The method of claim 2 wherein the model data comprises passive model data.

6. (New) The method of claim 5 wherein the passive model data comprises browser cookies; destination IP histories; originating IP address; originating IP address traffic

data; originating IP address physical location; and/or third party data regarding abusers comprising originating IP addresses and physical locations.

7. (New) The method of claim 2 wherein b) comprises enabling the client computing device to record input and making such recorded input available to a computing device for comparison according to c).

8. (New) The method of claim 7 wherein the computing device is the server.

9. (New) The method of claim 7 wherein the computing device is the client computing device.

10. (New) The method of claim 7 wherein the computing device is neither the server or the client computing device.

11. (New) The method of claim 7 wherein the recorded input comprises active model data and the recorded input is delivered to a computing device that is not the client computing device.

12. (New) The method of claim 2 wherein at least one monitoring program is operatively installed on the client computing device to perform b).

13. (New) The method of claim 2 wherein d) is performed by neither the server nor the client computing device.

14. (New) The method of claim 2 wherein at least some issued data is not data specific to determination of the user status.

15. (New) The method of claim 2 wherein the issued data is in specific response to a request issued by the client computing device.

16. (New) The method of claim 2 further comprising modifying data delivered to the client computing device subsequent to reaching a predetermined value for d) is reached.

17. (New) The method of claim 2 further comprising repeating a) – d) for a single user instance.

18. (New) The method of claim 2 further comprising repeating a) – d) for a single user instance until a predetermined value for d) is reached.

19. (New) The method of claim 2 further comprising repeating a) – c) and comparing the first instance of the value of d) to the second instance of the value of d).

20. (New) A method for assessing the likely user status of a client computing device interacting with a server wherein the computing device is in bi-directional operative communication with the server, the method comprising:

a) acquiring interest data from the client computing device prior to delivery of issued data by the server to the client computing device;

b) comparing the interest data to model data relating to human interaction with a computing device prior to the time in which the interest data is acquired; and

c) generating a value that represents a likelihood that a human user operated the client computing device prior to the time in which the interest data is acquired.

21. (New) The method of claim 2 wherein the interest data consists of available data.

**Amendment to the Abstract:**

Please insert the following Abstract in the application.

**ABSTRACT**

Methods, systems and apparatus for assessing the likely user status of a client computing device interacting with a server where the computing device is in bi-directional operative communication with the server, wherein the likely user status is one of a human operator or a computer executable program such as a "bot". By presenting issued data from the server to the client computing device and monitoring at least some of the data generated at the client computing device in response to the issued data, a comparison can be made between the monitored data and model data relating to human interaction with or in response to the issued data. The results of the comparison can lead to a value that represents the likelihood that the monitored data results from human interaction with or in response to the issued data. Modeled data includes, but is not limited to, data indicative of human interaction with a computing environment, whether active or passive.

## REMARKS/ARGUMENTS

Applicant further submits that this response is being filed within the shortened statutory period, and as such, no additional time is necessary in order for it to be considered timely. Should additional time be necessary in order for this response to be considered timely, please consider this communication as such supplemental petition. The Commissioner is hereby authorized to charge any deficiency of payment submitted herewith, or credit any overpayment, to Deposit Account No. 07-1897.

While every attempt has been made to provide a *bona fide* response to the referenced communication, if the Examiner finds this response deficient in any way, s/he is respectfully requested to contact applicant's attorney of record by telephone, at (425) 455-5575.

DATED this 17th day of February, 2009.

Respectfully submitted,

GRAYBEAL JACKSON LLP

Stephen M. Evans
Attorney for Applicant
Registration No. 37,128
155-108th Avenue N.E., Suite 350
Bellevue, WA 98004-5973
Phone: (425) 455-5575
Fax: (425) 455-1046
E-mail: sevans@graybeal.com

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/313,502 | 11/19/2008 | Timothy P. Heikell | 2667-001-03 | 7132 |

92306 7590 09/16/2011
Sound Intellectual Property PLLC
PO BOX 52652
Bellevue, WA 98015-2652

| EXAMINER | |
|---|---|
| HOLMES, MICHAEL B | |
| **ART UNIT** | **PAPER NUMBER** |
| 2129 | |
| **MAIL DATE** | **DELIVERY MODE** |
| 09/16/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| *Office Action Summary* | Application No. | Applicant(s) | |
|---|---|---|---|
| | 12/313,502 | HEIKELL, TIMOTHY P. | |
| | Examiner | Art Unit | |
| | MICHAEL B. HOLMES | 2129 | |

***-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --***

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *3* MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on *19 November 2008*.

2a)☐ This action is **FINAL**. 2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5)☒ Claim(s) *1-21* is/are pending in the application.

5a) Of the above claim(s) *1* is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☒ Claim(s) *2-21* is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

10)☒ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

12)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

13)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

a)☐ All b)☐ Some * c)☐ None of:

1.☐ Certified copies of the priority documents have been received.

2.☐ Certified copies of the priority documents have been received in Application No. _____.

3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☐ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _____.
4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .
5) ☐ Notice of Informal Patent Application
6) ☐ Other: _____.

UNITED STATES PATENT AND TRADEMARK OFFICE

P.O. Box 1450, Alexandria, Virginia 22313-1450 – WWW.USPTO.GOV

# Examiner's Detailed Office Action

1. This Office Action is responsive to communication, filed 11/19/2008.

## Information Disclosure Statement

2. Applicant is respectfully remind of the Duty to disclose 37 C.F.R. 1.56 all pertinent information and material pertaining to the patentability of applicant's claimed invention, by continuing to submitting in a timely manner PTO-1449, Information Disclosure Statement (IDS) with the filing of applicant's of application or thereafter.

## Drawings

3. Applicant will need to submit some form of drawing e.g., a flow chart representing the processes or processing of the claimed invention. Once submitted the formal drawing(s) will be reviewed by the Office of Initial Patent Examination (OIPE) and/or the USPTO Office of Draftperson's Patent Drawings Review. Appropriate correction is required.

## Specification

4. The specification has not been checked to the extent necessary to determine the presence of all possible minor errors. Appropriate correction is required.

## Claim Rejections - 35 USC § 102

5. The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (e) the invention was described in (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section 351(a) shall have the effects for purposes of this subsection of an application filed in the United States only if the international application designated the United States and was published under Article 21(2) Of such treaty in the English language.

6. Claims 2-21 is/are rejected under 35 U.S.C. 102(e) as being anticipated by Sundstrom (USPAP Pub. No.: US 2008/0225870 A1).

Regarding independent claim(s) 2 & 20.

Sundstrom describes assessing the likely user status of a client computing device interacting with a server wherein the computing device is in bi-directional operative communication with the server, [*see* Abstract; FIG. 1 – FIG. 7; & [0001]-[0007] & [0016]-[0086]; *While applicant's invention has been particularly shown and described with reference to a preferred embodiment, it*

*will be understood by those skilled in the art that various changes in form and detail may be made*

*therein without departing from the spirit and scope of the invention.*] comprising: a) presenting issued data to the client computing device; [*see* Abstract; FIG. 1 – FIG. 7; & [0001]-[0007] & [0016]-[0086]; *While applicant's invention has been particularly shown and described with reference to a preferred embodiment, it will be understood by those skilled in the art that various*

*changes in form and detail may be made therein without departing from the spirit and scope of the invention.*] b) monitoring at least some data generated at the client computing device in response to the issued data; [*see* Abstract; FIG. 1 – FIG. 7; & [0001]-[0007] & [0016]-[0086]; *While applicant's invention has been particularly shown and described with reference to a preferred embodiment, it will be understood by those skilled in the art that various changes in form and detail may be made therein without departing from the spirit and scope of the invention.*]

c) comparing the monitored data to model data relating to human interaction with or in response to the issued data; [*see* Abstract; FIG. 1 – FIG. 7; & [0001]-[0007] & [0016]-[0086]; *While applicant's invention has been particularly shown and described with reference to a preferred embodiment, it will be understood by those skilled in the art that various changes in form and detail may be made therein without departing from the spirit and scope of the invention.*]

and d) generating a value that represents a likelihood that the monitored data results from human interaction with or in response to the issued data; [*see* Abstract; FIG. 1 – FIG. 7; & [0001]-[0007] & [0016]-[0086]; *While applicant's invention has been particularly shown and described with reference to a preferred embodiment, it will be understood by those skilled in the art that various changes in form and detail may be made therein without departing from the spirit and scope of the invention.*] the likely user status of a client computing device interacting with a server

wherein the computing device is in bi-directional operative communication with the server, [*see* Abstract; FIG. 1 – FIG. 7; & [0001]-[0007] & [0016]-[0086]; *While applicant's invention has been particularly shown and described with reference to a preferred embodiment, it will be understood by those skilled in the art that various changes in form and detail may be made therein*

*without departing from the spirit and scope of the invention.*] comprising: a) acquiring interest data

from the client computing device prior to delivery of issued data by the server to the client computing device; [*see* Abstract; FIG. 1 – FIG. 7; & [0001]-[0007] & [0016]-[0086]; *While applicant's invention has been particularly shown and described with reference to a preferred embodiment, it will be understood by those skilled in the art that various changes in form and detail may be made therein without departing from the spirit and scope of the invention.*] b) comparing the interest data to model data relating to human interaction with a computing device prior to the time in which the interest data is acquired; [*see* Abstract; FIG. 1 – FIG. 7; & [0001]-[0007] & [0016]-[0086]; *While applicant's invention has been particularly shown and described with reference to a preferred embodiment, it will be understood by those skilled in the art that various changes in form and detail may be made therein without departing from the spirit and scope of the invention.*] and c) generating a value that represents a likelihood that a human user operated the client computing device prior to the time in which the interest data is acquired. [*see* Abstract; FIG. 1 – FIG. 7; & [0001]-[0007] & [0016]-[0086]; *While applicant's invention has been particularly shown and described with reference to a preferred embodiment, it will be understood by those skilled in the art that various changes in form and detail may be made therein*

*without departing from the spirit and scope of the invention.*]

Regarding dependent claim(s) 3-19 & 21.

Sundstrom describes the subject matter of claims 3-19 & 21, of which, are rejected under the same rationale as their respective base claim. [*see* Abstract; FIG. 1 – FIG. 7; & [0001]-[0007]

& [0016]-[0086]; *While applicant's invention has been particularly shown and described with reference to a preferred embodiment, it will be understood by those skilled in the art that various changes in form and detail may be made therein without departing from the spirit and scope of the invention.*]

## Claim Interpretation

7. The claims and only the claims form the metes and bounds of the invention. "Office personnel are to give the claims their broadest reasonable interpretation in light of the supporting disclosure. *In re Morris*, 127 F.3d 1048, 1054-55, 44USPQ2d 1023, 1027-28 (Fed. Cir. 1997). Moreover, limitations appearing in the specification but not recited in the claim are not read into the claim. *In re Prater*, 415 F.2d, 1393, 1404-05, 162 USPQ 541,550-551 (CCPA 1969)" (MPEP p 2100-8, c 2,145-48; p 2100-9, c 1,1 1-4).

8. The Examiner has full latitude to interpret each claim in the broadest reasonable sense. The Examiner will reference prior art using terminology familiar to one of ordinary skill in the art. Such an approach is broad in concept and can be either explicit or implicit in meaning.

9. Examiner's Notes are/if provided with the cited references to prior art to assist the applicant to better understand the nature of the prior art, application of such prior art and, as appropriate, to further indicate other prior art that maybe applied in other office actions. Such comments are entirely consistent with the intent and spirit of compact prosecution. However, and unless otherwise stated, the citations are self-explanatory to one skilled in the art and do not need any further explanation. Moreover, the Examiner's Notes are not prior art but a link to prior art that one of ordinary skill in the art would find inherently or obviously appropriate.

10. Unless otherwise annotated, as aforementioned, Examiner's statements are to be interpreted in reference to that of one of ordinary skill in the art. Statements made in reference to the condition of the disclosure constitute, on the face of it, the basis and such would be obvious to one of ordinary skill in the art, establishing thereby an inherent or obviousness prima facie case or statement(s).

## Correspondence Information

11. Any inquiries concerning this communication or earlier communications from the examiner should be directed to Michael B. Holmes, who may be reached Monday through Friday, between 8:00 a.m. and 5:00 p.m. EST. or via telephone at (571) 272-3686 or facsimile transmission (571) 273-3686 or email michael.holmesb@uspto.gov.

If you need to send an Official facsimile transmission, please send it to (571) 273-8300.

If attempts to reach the examiner are unsuccessful the Examiner's Supervisor (SPE), Jeffrey Gaffin, may be reached at (571) 272-4146.

Hand-delivered responses should be delivered to the Receptionist @ (Customer Service Window Randolph Building 401 Dulany Street Alexandria, VA 22313), located on the first floor of the south side of the Randolph Building.

Finally, information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Moreover, status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more

information about the PAIR system, see http://pair-direct.uspto.gov. Should you have any questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) toll-free @ 1-866-217-9197.

***Michael B. Holmes***
Primary Examiner
Artificial Intelligence
Art Unit 2129
United States Department of Commerce
Patent & Trademark Office

*Saturday, September 10, 2011*
*MBH*

*/Michael B. Holmes/*
*Primary Examiner, Art Unit 2129*

| IN THE UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO) | |
|---|---|
| Application Serial Number | 12/313,502 |
| Confirmation Number | 7132 |
| Filing Date | November 19, 2008 |
| Title of Application | Systems, Methods and Apparatus for Evaluating Status of Computing Device User |
| First Named Inventor | Timothy P. Heikell |
| Assignee | (none) |
| Group Art Unit | 2129 |
| Examiner | Michael B. Holmes |
| Attorney Docket Number | H085-0002US |

To: Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

From: Beatrice L. Koempel-Thomas (Tel. 509-324-9256; Fax 509-323-8979)
Lee & Hayes, PLLC
601 W. Riverside Ave, Suite 1400
Spokane, WA 99201

**Customer Number 29150**

## Response to August 16, 2011 Non-Final Office Action

Applicant's representative files this response to the Non-Final Office Action of August 16, 2011 ("Office Action"), with a Petition for Revival of an Application for Patent Abandoned Unintentionally. Applicant's representative pays fees by credit card through the EFS Web; however, Applicant's representative hereby authorizes the Commissioner to charge any deficiency of fees and credit any overpayments to Deposit Account Number 12-0769.

**Specification Amendments** begin on page 2 of this document.

**Drawings Submitted** begin on page 5 of this document.

**Claim Amendments** begin on page 6 of this document.

**Remarks** begin on page 11 of this document.

## SPECIFICATION AMENDMENTS

Please amend the paragraph starting at line 22 on page 2 as follows:

The invention is generally directed to methods, systems and apparatus for assessing the likely user status of a computing device interacting with a server where computing device is in bi-directional operative communication with the server wherein the status is one of a human operator or a computer executable program (also referred to herein as a "bot"). This assessment comprises comparing acquired and/or available data relating to the operation of the computing device to suitable models embodying human user derived data (model data). In most embodiments, the comparison yields a probability value as to one of the status states 140, 330, which then may be used by a program or administrator of the server to permit or deny access and/or operation to the computing device. Because many of the invention embodiments provide a probability result as opposed to a binary result, the invention embodiments avoid the "there is only one right answer" phenomena inherent in prior art CAPTCHA tests. In other words, rather than placing the burden of proof on the user for functionality/access, which if the user is a human invokes the negative consequences of conventional CAPTCHA tests as previously described, the burden is shifted to the server side of the equation.

Please amend the paragraph starting at line 8 on page 3 as follows:

As used herein, "model data", its equivalents and verb forms comprises data indicative of human interaction with a computing environment and that can be received by a computing device that is physically remote from the sample computing environment and equivalents. Model data comprises two main categories: active model data 220 and passive model data 210. Active model data comprises data acquired from a computing device user's interactions therewith and within the computing environment where such data is not normally stored (logged) or transmitted to a remote location. Such model data includes, without limitation, pointing device vector movements and/or cadence, key stroke combinations and/or cadence, time differentials between stimulus (e.g., display of dialog box, radio button, form field, etc., and/or generation of sound) and user response (e.g., input into dialog box, selection of radio button, completion of form field, new page display request rates, etc., and/or input response to sound), and similar metrics. Generally, such data must be monitored and stored 210, 220 by a program operative on the computing device, which makes the data available to another program, preferably on a server 320, or actively transmits such data to a server. Passive model data comprises data available from a computing device user's interactions therewith and within the computing environment where such data is normally stored (logged) or transmitted to a remote location. Such model data includes, without limitation, browser

cookies, destination IP histories, originating IP address, originating IP address traffic data, originating IP address physical location, third party data regarding abusers (including originating IP addresses and physical locations), etc.

Please amend the paragraph starting at line 18 on page 4 as follows:

With the foregoing definitions in mind, operation of the various invention embodiments can be better understood. In a first series of embodiments, a comparison between interest data, acquired prior to delivery of issued data to the client computing device, and model data is performed to ascertain the likely status of the client computing device, i.e., human user or bot 130, 420. In a second series of embodiments, a comparison between monitored data, by definition acquired after delivery of issued data to the client computing device, and model data is performed to ascertain the likely status of the client computing device, i.e., human user or bot 130, 420. In both series of embodiments, acquired and/or available data may be used for comparison with suitable model data. The recited comparisons can take place locally on the computing device, remotely on the originating server, or on a server dedicated to performing such actions and for which subscriptions may be offered in conjunction with methods for providing services according to the methods, apparatus and systems embodiments described herein.

Please amend the paragraph starting at line 3 on page 5 as follows:

While available data represents data that is readily harvestable by query, for example, from the computing device or the computing environment in which the device operates, acquired data requires some form of information capture means. In the various embodiments described herein, the computing device is caused to monitor and retain certain data useful as acquired data for comparison purposes. Such monitoring and retaining means for acquiring data from the computing device comprises, without limitation, modification of (an) existing program(s) (e.g., such means are included in available browsers), a covert program (e.g., many malware applications log keystrokes and periodically pass them to remote servers for malicious purposes; similar technology can be used to exploit necessary aspects of the invention embodiments), or a servlet/Java applet. If user privacy is a concern, the monitoring and retaining means can remain dormant until activated by, for example, an enabled web site 110.

Please amend the paragraph starting at line 14 on page 5 as follows:

The monitoring and retaining means may also enable transmission of some or all retained data 410, in encrypted or unencrypted form, as may be

desired for privacy and security purposes, and/or merely retain the data until requested from, for example, the server, at which time some or all data may be transmitted 120, 310. As described above with reference to the comparison actions 130, 410, such receiving and/or polling actions can be carried out remotely on the originating server or on a server dedicated to performing such actions, if not performed locally on the computing device.

## DRAWINGS SUBMITTED

Applicant respectfully submits Figures 1-4 in response to the request from the Office. No drawings were previously filed with the Office.

## CLAIM AMENDMENTS

1. (Canceled)

2. (Currently Amended) A method for assessing a confidence level that an operator ~~the likely user status~~ of a client computing device interacting with a server ~~wherein the computing device is in bi-directional operative communication with the server~~ is a human being rather than an autonomic computer application, the method comprising:

a) a single user of a client computing device requesting data from a server;

~~a)~~ b) the server presenting ~~issued~~ data issued by the server to the client computing device;

~~b)~~ c) monitoring at least some data generated by the user at the client computing device in response to the issued data;

~~c)~~ d) comparing the monitored data to model data relating to human interaction with or in response to the issued data; and

~~d)~~ e) generating a value that represents a ~~likelihood~~ confidence level that the monitored data ~~results from~~ is a result of human interaction on the client computing device rather than that of an autonomic user with or in response to the issued data.

3. (Previously Presented) The method of claim 2 wherein the model data comprises active model data.

4. (Previously Presented) The method of claim 3 wherein the active model data comprises pointing device vector movements and/or cadence; key stroke combinations and/or cadence; and/or time differentials between a display element and a response.

5. (Previously Presented) The method of claim 2 wherein the model data comprises passive model data.

6. (Previously Presented) The method of claim 5 wherein the passive model data comprises browser cookies; destination IP histories; originating IP address; originating IP address traffic data; originating IP address physical location; and/or third party data regarding abusers comprising originating IP addresses and physical locations.

7. (Previously Presented) The method of claim 2 wherein b) comprises enabling the client computing device to record input and making such recorded input available to a computing device for comparison according to c).

8. (Previously Presented) The method of claim 7 wherein the computing device is the server.

9. (Previously Presented) The method of claim 7 wherein the computing device is the client computing device.

10. (Previously Presented) The method of claim 7 wherein the computing device is neither the server or the client computing device.

11. (Previously Presented) The method of claim 7 wherein the recorded input comprises active model data and the recorded input is delivered to a computing device that is not the client computing device.

12. (Previously Presented) The method of claim 2 wherein at least one monitoring program is operatively installed on the client computing device to perform b).

13. (Previously Presented) The method of claim 2 wherein d) is performed by neither the server nor the client computing device.

14. (Previously Presented) The method of claim 2 wherein at least some issued data is not data specific to determination of the user status.

15. (Previously Presented) The method of claim 2 wherein the issued data is in specific response to a request issued by the client computing device.

16. (Previously Presented) The method of claim 2 further comprising modifying data delivered to the client computing device subsequent to reaching a predetermined value for d) is reached.

17. (Previously Presented) The method of claim 2 further comprising repeating a) - d) for a single user instance.

18. (Previously Presented) The method of claim 2 further comprising repeating a) - d) for a single user instance until a predetermined value for d) is reached.

19. (Previously Presented) The method of claim 2 further comprising repeating a) - c) and comparing the first instance of the value of d) to the second instance of the value of d).

20. (Currently Amended) A method for assessing a confidence level that an operator ~~the likely user status~~ of a client computing device interacting with a server ~~wherein the computing device is in bi-directional operative communication with the server~~ is a human being rather than an autonomic computer application, the method comprising:

a) acquiring interest data from the client computing device prior to delivery of issued data by the server to the client computing device;

b) comparing the interest data to model data relating to human interaction with a computing device prior to the time in which the interest data is acquired; and

c) generating a value that represents a ~~likelihood~~ confidence level that a human user rather than an autonomic user operated the client computing device prior to the time in which the interest data is acquired.

21. (Previously Presented) The method of claim 2 wherein the interest data consists of available data.

# REMARKS

Applicant respectfully requests reconsideration and allowance of all of the claims of the application. The status of the claims is as follows:

- Claims 2-21 were pending at the time of the action.
- Applicant amends claims 2 and 20.
- Applicant presents claims 2-21 for examination.

The Application supports the claim amendments at least at page 2 (third full paragraph) and at page 3 (second full paragraph) of the originally filed application. The amendments submitted herein do not introduce new matter.

## Drawings Submitted

The Office requested "some form of drawing e.g., a flow chart representing the processes or processing of the claimed invention." *Office Action*, p. 2.

Applicant therefore respectfully submits herewith Figures 1-4 and adds corresponding reference numbers in example portions of the specification.

## Sundstrom Does Not Anticipate Claims 2-21

Claims 2-21 stand rejected under 35 U.S.C. § 102(e) as allegedly being anticipated by Sundstrom, U.S. Patent Application Publication No. 2008/0225870 ("Sundstrom"). Applicant respectfully traverses the rejection. Nevertheless, solely in the interest of expediting allowance, Applicant herein amends claims 2 and 20 as shown above. Applicant respectfully requests reconsideration of the claims.

*Independent Claim 2*

Claim 2, as amended herein, recites (with added language underlined):

> A method for assessing a confidence level that an operator of a client computing device interacting with a server is a human being rather than an autonomic computer application, the method comprising:
> a) a single user of a client computing device requesting data from a server;
> b) the server presenting data issued by the server to the client computing device;
> c) monitoring at least some data generated by the user at the client computing device in response to the issued data;
> d) comparing the monitored data to model data relating to human interaction with or in response to the issued data; and
> e) generating a value that represents a confidence level that the monitored data is a result of human interaction on the client computing device rather than that of an autonomic user with or in response to the issued data.

Sundstrom describes "providing predicted likelihood of communication between users." *Sundstrom*, Abstract. "The method includes predicting a likelihood that a first user will initiate communication with a second user based on stored information for the first user that indicates the second user, associating the predicted likelihood with status information for the first user, and providing for indicating the status information with the predicted likelihood to the second user." *Id.*

However, Sundstrom does not disclose all the features of amended claim 2.

In the rejection of claim 2 before the amendment, the Office cites Sundstrom as disclosing, "generating a value that represents a likelihood that the monitored data results from human interaction with or in response to the issued data." *Office Action*, p. 4 (citing *Sundstrom*, ¶¶ [0001]-0007] & [0016]-[0086], Figs. 1-7, Abstract). However, Sundstrom does not disclose "generating a value that represents a confidence level that the monitored data is a result of **human interaction** on the client computing device as

opposed to that of **an autonomic user**," as amended claim 2 recites (emphasis added). Instead, Sundstrom merely discusses the "a method for providing predicted likelihood of communication between [two] users," that is, "predicting a likelihood that a first user will initiate communication with a second user . . . and providing for indicating the status information with the predicted likelihood to the second user." *Sundstrom*, ¶ [0006]. Sundstrom does not disclose any "confidence level" that "monitored data" is a result of "human interaction" rather than "autonomic user" interaction, as amended claim 2 recites. In fact, Sundstrom is silent as to **any** distinction between human and autonomic users. While amended claim 2 seeks to determine a "confidence level" as to whether "monitored data" from an "interaction on [a] client computing device" was from a human or not, Sundstrom merely seeks to predict likelihood of communication between two particular users going forward: that is, whether "a first user may initiate communication with a second user." *Sundstrom*, ¶ [0004].

Consequently, Sundstrom does not disclose at least this element of amended claim 2.

For at least the reasons presented herein, Sundstrom does not disclose all of the features of amended claim 2. Accordingly, Applicant submits that Sundstrom does not anticipate amended claim 2, and respectfully requests that the Office withdraw the § 102 rejection of claim 2.

*Dependent Claims 3-19 and 21*

Claims 3-19 and 21 ultimately depend from independent claim 2. As discussed above, amended claim 2 is not anticipated by Sundstrom, and is therefore allowable over the cited document. Therefore, claims 3-19 and 21 are also allowable over the cited

document of record for at least their dependency from an allowable base claim, and also for the additional features that each recites. Accordingly, Applicant respectfully requests that the Office withdraw the § 102 rejection of claims 3-19 and 21.

*Independent Claim 20*

Claim 20, as amended herein, recites (with added language underlined):

> A method for assessing a confidence level that an of a client computing device interacting with a server is a human being rather than an autonomic computer application, the method comprising:
> a) acquiring interest data from the client computing device prior to delivery of issued data by the server to the client computing device;
> b) comparing the interest data to model data relating to human interaction with a computing device prior to the time in which the interest data is acquired; and
> c) generating a value that represents a confidence level that a human user rather than an autonomic user operated the client computing device prior to the time in which the interest data is acquired.

Applicant describes Sundstrom above. However, Sundstrom does not disclose all the features of amended claim 20.

In the rejection of claim 20 before the amendment, the Office cites Sundstrom as disclosing, "generating a value that represents a likelihood that the monitored data results from human interaction with or in response to the issued data." *Office Action*, p. 4 (citing *Sundstrom*, ¶¶ [0001]-0007] & [0016]-[0086], Figs. 1-7, Abstract). However, Sundstrom does not disclose "generating a value that represents a confidence level that **a human user as opposed to an autonomic user** operated the client computing device prior to the time in which the interest data is acquired," as amended claim 20 recites (emphasis added). Instead, Sundstrom merely discusses the "a method for providing predicted likelihood of communication between [two] users," that is, "predicting a likelihood that a first user will initiate communication with a second user . . . and providing for indicating

the status information with the predicted likelihood to the second user." *Sundstrom*, ¶ [0006]. Sundstrom does not disclose any "confidence level" that ""a human user" rather than an "autonomic user" "**operated the client computing device prior to the time in which the interest data is acquired**," as amended claim 2 recites. In fact, Sundstrom is silent as to **any** distinction between human and autonomic users. While amended claim 20 recites a "confidence level" as to whether the user who "operated the client computing device" was human or not, Sundstrom merely seeks to predict likelihood of communication between two particular users: that is, whether "a first user may initiate communication with a second user." *Sundstrom*, ¶ [0004].

Consequently, Sundstrom does not disclose at least this element of amended claim 20.

For at least the reasons presented herein, Sundstrom does not disclose all of the features of amended claim 20. Accordingly, Applicant submits that Sundstrom does not anticipate amended claim 20, and respectfully requests that the Office withdraw the § 102 rejection of claim 20.

## Conclusion

For at least the foregoing reasons, all pending claims are in condition for allowance. Applicant respectfully requests reconsideration and prompt issuance of the application.

If any issues remain that would prevent allowance of this application, **Applicant requests that the Examiner contact the undersigned representative before issuing a subsequent Action.**

Respectfully Submitted,

Lee & Hayes, PLLC
Representatives for Applicant

By: /Susan M. Moss 72913/ Dated: August 18, 2015

Susan M. Moss
(susanm@leehayes.com; 509-944-4660)
Registration No. 72913

Beatrice L. Koempel-Thomas
(bea@leehayes.com; 509-944-4759)
Registration No. 58213

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

29150 7590 10/27/2016
LEE & HAYES, PLLC
601 W. RIVERSIDE AVENUE
SUITE 1400
SPOKANE, WA 99201

| EXAMINER | |
|---|---|
| HOLMES, MICHAEL B | |
| ART UNIT | PAPER NUMBER |
| 2129 | |

DATE MAILED: 10/27/2016

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/313,502 | 11/19/2008 | Timothy P. Heikell | H085-0002US | 7132 |

TITLE OF INVENTION: Systems, methods, apparatus for evaluating status of computing device user

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 01/27/2017 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

# PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to:** **Mail** **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
**or Fax (571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

29150 7590 10/27/2016
LEE & HAYES, PLLC
601 W. RIVERSIDE AVENUE
SUITE 1400
SPOKANE, WA 99201

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

| |
|---|
| (Depositor's name) |
| (Signature) |
| (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/313,502 | 11/19/2008 | Timothy P. Heikell | H085-0002US | 7132 |

TITLE OF INVENTION: Systems, methods, apparatus for evaluating status of computing device user

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 01/27/2017 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| HOLMES, MICHAEL B | 2129 | 706-052000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).
   - ☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
   - ☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
   (1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
   (2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.
   1 ____________
   2 ____________
   3 ____________

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

4a. The following fee(s) are submitted:
- ☐ Issue Fee
- ☐ Publication Fee (No small entity discount permitted)
- ☐ Advance Order - # of Copies ____________

4b. Payment of Fee(s): **(Please first reapply any previously paid issue fee shown above)**
- ☐ A check is enclosed.
- ☐ Payment by credit card. Form PTO-2038 is attached.
- ☐ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number ____________ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)
- ☐ Applicant certifying micro entity status. See 37 CFR 1.29 — NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
- ☐ Applicant asserting small entity status. See 37 CFR 1.27 — NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
- ☐ Applicant changing to regular undiscounted fee status. — NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature ____________ Date ____________

Typed or printed name ____________ Registration No. ____________

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/313,502 | 11/19/2008 | Timothy P. Heikell | H085-0002US | 7132 |

29150 7590 10/27/2016

LEE & HAYES, PLLC
601 W. RIVERSIDE AVENUE
SUITE 1400
SPOKANE, WA 99201

| EXAMINER | |
|---|---|
| HOLMES, MICHAEL B | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2129 | |

DATE MAILED: 10/27/2016

**Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)**
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | **Application No.**<br>12/313,502 | **Applicant(s)**<br>HEIKELL, TIMOTHY P. | |
|---|---|---|---|
| | **Examiner**<br>MICHAEL B. HOLMES | **Art Unit**<br>2129 | **AIA (First Inventor to File) Status**<br>No |

***-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--***

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *08/18/2015*.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on______.
2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on ______; the restriction requirement and election have been incorporated into this action.
3. ☒ The allowed claim(s) is/are *2-21*. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.
4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   **Certified copies:**

   a) ☐ All b) ☐ Some *c) ☐ None of the:
   1. ☐ Certified copies of the priority documents have been received.
   2. ☐ Certified copies of the priority documents have been received in Application No. ______ .
   3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: ______.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.
   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date ______.

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**
6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**
1. ☒ Notice of References Cited (PTO-892)
2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date ______
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date ______ .
5. ☐ Examiner's Amendment/Comment
6. ☐ Examiner's Statement of Reasons for Allowance
7. ☐ Other ______.

/MICHAEL B. HOLMES/
Primary Examiner, Art Unit 2129

| *Notice of References Cited* | Application/Control No. 12/313,502 | Applicant(s)/Patent Under Reexamination HEIKELL, TIMOTHY P. | |
|---|---|---|---|
| | Examiner MICHAEL B. HOLMES | Art Unit 2129 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-9,208,461 B2 | 12-2015 | Busa; Anthony | G06Q10/06 | 1/1 |
| * | B | US-9,152,381 B2 | 10-2015 | Valentino; John | G06F7/588 | 1/1 |
| * | C | US-9,240,078 B2 | 01-2016 | Hedley; Jay E. | G07B15/06 | 1/1 |
| * | D | US-9,088,652 B2 | 07-2015 | Bushey; Robert R. | G10L19/0204 | 1/1 |
| * | E | US-8,903,052 B2 | 12-2014 | Moore; Victor S. | H04M3/493 | 379/72 |
| * | F | US-8,825,379 B2 | 09-2014 | Schalk; Thomas Barton | G01C21/26 | 340/995.12 |
| * | G | US-8,824,659 B2 | 09-2014 | Bushey; Robert R. | G10L19/0204 | 379/265.02 |
| * | H | US-8,775,236 B2 | 07-2014 | Hedley; Jay E. | G06Q30/0283 | 340/928 |
| * | I | US-8,775,235 B2 | 07-2014 | Hedley; Jay E. | G07B15/06 | 705/13 |
| * | J | US-8,738,287 B2 | 05-2014 | Schalk; Thomas Barton | G01C21/3608 | 340/995.12 |
| * | K | US-8,706,405 B2 | 04-2014 | Schalk; Thomas Barton | G01C21/26 | 340/995.12 |
| * | L | US-8,700,259 B2 | 04-2014 | Schalk; Thomas Barton | G01C21/3608 | 701/36 |
| * | M | US-8,694,244 B2 | 04-2014 | Schalk; Thomas Barton | G01C21/26 | 340/995.12 |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | A proactive risk-aware robotic sensor network for Critical Infrastructure Protection Jamieson McCausland; George Di Nardo; Rafael Falcon; Rami Abielmona; Voicu Groza; Emil Petriu 2013 IEEE International Conference on Computational Intelligence and Virtual Environments for Measurement Systems and Applications (CIVEMSA) Year: 2013 Pages: 132-137 |
| | V | Trust Assessment from Observed Behavior: Toward and Essential Service for Trusted Network Computing P. Pal; F. Webber; M. Atighetchi; N. Combs Fifth IEEE International Symposium on Network Computing and Applications (NCA'06) Year: 2006 Pages: 285 - 292, DOI: 10.1109/NCA.2006.53 IEEE Conference Publications |
| | W | Testability modeling and analysis of a rocket engine test stand G. Temple; N. Jize; P. Wysocki 2005 IEEE Aerospace Conference Year: 2005 Pages: 3874 - 3895, DOI: 10.1109/AERO.2005.1559694 IEEE Conference Publications |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.